IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
COLUMBIA DIVISION

| | | |
|---|---|---|
| Robert Mason Hendricks, | ) | C/A No. 3:08-3299-CMC-PJG |
| Jacqueline Taylor Hendricks, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | **REPORT AND RECOMMENDATION** |
| vs. | ) | |
| | ) | |
| Robert Stepp, Esquire; Rhonda Hunsinger; | ) | |
| Maurice Hood; Jeannie Weingarth; | ) | |
| Michael Taylor; | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

This matter is before the court pursuant to 28 U.S.C. § 636(b) and Local Civil Rule

73.02(B)(2) DSC on the defendants' motion to dismiss for lack of subject matter jurisdiction (Docket

Entries 35 and 60[1]) and plaintiffs' motion for a preliminary injunction and appointment of counsel.

(Docket Entry 70.)[2]

---

[1]On March 18, 2009, Defendants Jeannie Weingarth and Michael Taylor filed a motion to join in the Motion to Dismiss (Docket Entry 60) which was granted at the March 18, 2009 hearing (Docket Entry 63).

[2]Also pending before the court is the plaintiffs' motion for summary judgment (Docket Entry 43); however, pursuant to the court's order (Docket Entry 67) suspending the scheduling order and staying other deadlines in this matter until resolution of the defendants' motion to dismiss, this motion has not been fully briefed and is therefore not ripe for adjudication.



## BACKGROUND

According to the Complaint and the various filings of the parties in connection with the pending motions,[3] Plaintiff Jacqueline Hendricks ("Mrs. Hendricks") is a musician under exclusive contract with JAT Entertainment. Robert Hendricks ("Mr. Hendricks"), Mrs. Hendricks's husband, is the chief executive officer and acting manager of JAT Entertainment. He serves as the professional agent for Mrs. Hendricks. Mrs. Hendricks has performed for many years with the South Carolina Philharmonic ("Philharmonic"), a non-profit South Carolina corporation, and was the interim principal cellist during the 2007-2008 season. According to the Complaint, Defendants Stepp, Hunsinger, and Hood are, respectively, the President, Director, and Personnel Director of the Philharmonic.[4] (Compl. ¶¶ 7-9, Docket Entry 1 at 3.) Defendants Weingarth and Taylor[5] are, respectively, the House Manager and Director of the Koger Center, a performing arts center operated by the University of South Carolina, a public state university. (See Compl. ¶¶ 3-4, Docket Entry 1 at 3.)

The Hendrickses include various allegations in their Complaint relating to a prior dispute and lawsuit. That dispute appears to have begun when Mrs. Hendricks's photograph was used in an advertisement in the Philharmonic's 2007-2008 annual program book without her consent. (Compl. ¶ 12, Docket Entry 1 at 4; see Docket Entry 1-4.) The filings with the court show that the

---

[3]As more fully discussed below, due to the current procedural posture of this case, the court is considering, in addition to the Complaint initially filed by the Hendrickses, certain allegations made at the motions hearing held on March 18, 2009, and contained in other filings by the plaintiffs specifically permitted by the court in connection with the instant motion.

[4]The court will collectively refer to these defendants as the "Philharmonic Defendants."

[5]The court will collectively refer to Defendants Weingarth and Taylor as the "Koger Center Defendants." They are represented by separate counsel than that of the Philharmonic Defendants.



Hendrickses, who are both Caucasian, retained William Pyatt, an African-American lawyer, in connection with that dispute, which appears to have been settled on November 6, 2007. (Pls.' Sur-Reply to Mot. Dismiss, Docket Entry 89 at 3, 5; Docket Entry 1-4 at 16.)

Based on the Hendrickses' filings, the instant dispute seems to have initiated on or around October 11, 2007 when Mr. Hendricks, as Mrs. Hendricks's manager, requested to be allowed access to closed rehearsals and backstage during concerts. (Mr. Hendricks Aff., Docket Entry 1-2.) Defendant Hunsinger then granted Mr. Hendricks access to closed rehearsals. (Compl. ¶ 14, Docket Entry 1 at 4.) On October 13, 2007, Mr. Hendricks was denied backstage access by Koger Center staff and, therefore, refused to allow Mrs. Hendricks to perform until he could receive a backstage pass. After a meeting with Hunsinger and Weingarth, a pass was granted for the concert. (Compl. ¶ 15, Docket Entry 1 at 4.) During the performance, Mr. Hendricks became ill, experiencing chest pains and numbness in his left hand. (Compl. ¶ 16, Docket Entry 1 at 4; Accident Report, Docket Entry 1-4 at 8.) He was examined by the Koger Center nurse, who recommended that he go to the hospital. (Compl. ¶ 16, Docket Entry 1 at 4.) During intermission, Mrs. Hendricks joined Mr. Hendricks outside the Koger Center. (Docket Entry 43-3 at 2.) Mr. Hendricks then decided that he did not want to go the hospital and Mrs. Hendricks returned to the Koger Center. Mr. Hendricks then attempted to re-enter the Koger Center performance area after the performance had recommenced and was denied entry at that time pursuant to Koger Center policy. According to the Koger Center Defendants, Mr. Hendricks then created a disturbance and attempted to push past a Koger Center staff member and forcibly enter the auditorium.[6] (Docket Entry 1-4 at 28.) Ultimately,

---

[6]The Hendrickses do not appear to dispute the Koger Center Defendants' assertions of fact on these points. (Tr., Docket Entry 75 at 23.)



Mr. Hendricks went to Providence Hospital and was admitted for treatment. (Compl. ¶ 17, Docket Entry 1 at 4.)

On October 19, 2007, the Koger Center issued a letter banning Mr. Hendricks from the Koger Center as a result of his "erratic, disruptive and disorderly conduct on October 13, 2007." (Docket Entry 1-4 at 28-29.) Subsequently, allegedly upon "advice of legal counsel," Mrs. Hendricks refused to perform with the Philharmonic. (Docket Entry 43-6 at 9; see also Docket Entry 43-7 at 5.) Ultimately, Defendant Hood terminated Mrs. Hendricks's contract with the Philharmonic, asserting that she had failed to perform according to her contract. (Docket Entry 43-7 at 9, 21-22.)

## DISCUSSION

**A.    Motion to Dismiss 12(b)(1) Standard**

All of the defendants have filed a motion to dismiss the Complaint for lack of subject matter jurisdiction, essentially asserting that none of the Hendrickses' allegations create a federal question that would confer jurisdiction pursuant to 28 U.S.C. § 1331.[7]   A motion to dismiss under Federal Rule of Civil Procedure 12(b)(1) examines whether the complaint fails to state facts upon which jurisdiction can be founded.  It is the plaintiff's burden to prove jurisdiction, and the court is to "regard the pleadings' allegations as mere evidence on the issue, and may consider evidence outside the pleadings without converting the proceeding to one for summary judgment."  Richmond, Fredericksburg & Potomac R.R. Co. v. United States, 945 F.2d 765, 768 (4th Cir. 1991).

To resolve a jurisdictional challenge under Rule 12(b)(1), the court may consider undisputed facts and any jurisdictional facts that it determines.  The court may dismiss a case for lack of subject

---

[7]The Hendrickses concede that diversity of citizenship is lacking in this case. (Tr., Docket Entry 75 at 24.)



matter jurisdiction on any of the following bases: "(1) the complaint alone; (2) the complaint supplemented by undisputed facts evidenced in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts." Johnson v. United States, 534 F.3d 958, 962 (8th Cir. 2008) (quoting Williamson v. Tucker, 645 F.2d 404, 413 (5th Cir. 1981)).

**B.**    ***Pro Se* Pleadings**

This court is required to liberally construe *pro se* complaints. Such *pro se* complaints are held to a less stringent standard than those drafted by attorneys, Gordon v. Leeke, 574 F.2d 1147, 1151 (4th Cir. 1978), and a federal district court is charged with liberally construing a complaint filed by a *pro se* litigant to allow the development of a potentially meritorious case. Erickson v. Pardus, 551 U.S. 89 (2007); Hughes v. Rowe, 449 U.S. 5, 9 (1980); Cruz v. Beto, 405 U.S. 319 (1972). When a federal court is evaluating a *pro se* complaint, the plaintiff's allegations are assumed to be true. Fine v. City of New York, 529 F.2d 70, 74 (2d Cir. 1975).

Nonetheless, the requirement of liberal construction does not mean that the court can ignore a clear failure in the pleading to allege facts which set forth a claim cognizable in a federal district court. See Weller v. Dep't of Soc. Servs., 901 F.2d 387 (4th Cir. 1990). The mandated liberal construction afforded to *pro se* pleadings means that if the court can reasonably read the pleadings to state a valid claim on which the plaintiff could prevail, it should do so; however, a district court may not rewrite a petition to include claims that were never presented, Barnett v. Hargett, 174 F.3d 1128 (10th Cir. 1999), construct the plaintiff's legal arguments for him, Small v. Endicott, 998 F.2d 411 (7th Cir. 1993), or "conjure up questions never squarely presented" to the court, Beaudett v. City of Hampton, 775 F.2d 1274, 1278 (4th Cir. 1985).



C.    **Plaintiffs' Theories of Federal Jurisdiction**

The Hendrickses' theories as to why the federal district court has jurisdiction over their claims have greatly evolved since the filing of the Complaint.  In their initial Complaint (Docket Entry 1), their allegations focused solely on Mr. Hendricks's access, or lack thereof, to rehearsals and to the backstage area during concerts, his subsequent ban from the Koger Center, and the termination of Mrs. Hendricks's contract with the Philharmonic.[8]  The defendants then moved to dismiss the Complaint, contending that it asserted no federal question.  (See Docket Entries 35, 60.) In response,[9] the Hendrickses asserted that their claims arose under the Americans with Disabilities Act ("ADA") and that Mr. Hendricks had been denied due process of law in violation of various civil rights statutes.  (Docket Entry 43.)  At the hearing on the defendants' motions, the court, mindful of the liberal pleading standard for *pro se* litigants and Rule 15's liberal rule for amendment of pleadings, explored the Hendrickses' theories of the case and attempted to clarify the nature of their claims.  With a liberal construction of their allegations, the Hendrickses essentially raised two potential federal issues:  (1) that Mr. Hendricks had been discriminated against in violation of the ADA in that he had been banned from the Koger Center due to his bipolar disorder, and that Mrs.

---

[8]Notably, most of these allegations appear to raise only issues of state law, as the implication of the Complaint is that these actions were taken in retaliation for the Hendrickses' prior lawsuit regarding the photograph.  (Compl. ¶¶ 12-13, Docket Entry 1 at 4.)  The only allegations appearing to raise a federal question are found in Paragraphs 19-21, where the Hendrickses allege that Defendant Hood violated Mrs. Hendricks's "civil rights to have a contract" and that Defendants Hood, Taylor, and Weingarth violated or conspired to violate Mr. Hendricks's constitutional right to due process of law. (Id. at ¶¶ 19-21.)

[9]The Hendrickses filed a "Return to Defendant[s'] . . . motion to dismiss."  However, in their response, the Hendrickses state that their arguments against dismissal are contained in the memorandum attached to their motion for summary judgment, which they filed contemporaneously with their response.  (See Docket Entries 42 at 1 & 43-2 at 15.)



Hendricks's contract had been terminated in retaliation for opposing that discrimination; and (2) that Mr. Hendricks had been denied due process of law because he had not received a hearing prior to being banned from the Koger Center or a right to appeal the ban.  (Tr., Docket Entry 75 at 24-32, 44-48.)

In light of these allegations, the court permitted both sets of defendants to file reply briefs regarding their motions to dismiss to address the question of whether the Hendrickses should be permitted to amend their Complaint to assert ADA and civil rights claims as they advanced at the motions hearing, or whether such amendments would be futile and therefore should be disallowed pursuant to Foman v. Davis, 371 U.S. 178 (1962).  The court also permitted the Hendrickses to file a "sur-reply" brief on that issue.  The court specifically limited the memoranda to the new allegations raised at the March 18 hearing.  (Tr., Docket Entry 75 at 56.)

Nonetheless, in their sur-reply, the Hendrickses injected yet a new theory into the case, claiming for the first time, in addition to the ADA and due process claims, that they had been discriminated against in violation of various civil rights statutes because they had retained an African-American attorney.  Thus, the Hendrickses, to date, have advanced three theories of federal jurisdiction:

(1)    ADA claims stemming from Mr. Hendricks's alleged bipolar disorder;

(2)    civil rights claims of a violation of due process relating to the defendants' alleged ban of Mr. Hendricks from the Koger Center; and

(3)    civil rights claims of discrimination for hiring an African-American lawyer.

The court will address each purported jurisdictional basis in turn.  Before doing so, however, it is instructive to review controlling precedent regarding federal jurisdiction.



Federal question jurisdiction exists over "civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. "For the Court to have jurisdiction under § 1331, it must be clear from the face of a well-pleaded complaint that there is a federal question; the federal issue must exist as part of the plaintiff's cause of action." Discover Bank v. Vaden, 489 F.3d 594, 609 (4th Cir. 2007). However, "[t]he mere assertion of a federal claim is not sufficient to obtain jurisdiction under 28 U.S.C. § 1331 . . . . 'Federal jurisdiction requires that a party assert a substantial federal claim.'" Lovern v. Edwards, 190 F.3d 648, 654 (4th Cir.1999) (quoting Davis v. Pak, 856 F.2d 648, 650 (4th Cir. 1988)); see also Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg., 545 U.S. 308, 313 (2005) ("[F]ederal jurisdiction demands not only a contested federal issue, but a substantial one."). Further, "federal courts must guard against the litigant who frames a pretextual federal issue solely for the purpose of having a state-law claim adjudicated in the federal system; Article III of the Constitution forbids this practice." Lovern, 190 F.3d at 655.

### 1.    ADA Claims Stemming from Mr. Hendricks's Alleged Bipolar Disorder

#### a.    Mr. Hendricks's discrimination claim

Title II of the ADA provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." See 42 U.S.C. § 12132. Title III of the ADA similarly prohibits discrimination "on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation." 42 U.S.C. § 12182. To establish a claim of discrimination under Title II of the ADA, a plaintiff must show:  (1) that he has a disability as



defined in the Act; (2) that he is qualified for the benefit in question; and (3) that he was excluded from the benefit due to discrimination *solely* on the basis of the disability. See Baird v. Rose, 192 F.3d 462, 467 (4th Cir. 1999). A claim under Title III requires a showing that (1) the plaintiff has a disability under the ADA; (2) that the defendant owns, leases, or operates a place of public accommodation; and (3) that the defendant discriminated against the plaintiff within the meaning of the ADA. See Roberts v. Royal Atl. Corp., 542 F.3d 363, 368 (2d Cir. 2008).

Based on the allegations advanced, Mr. Hendricks cannot prevail on either a Title II or a Title III claim against any of the defendants. Even assuming that Mr. Hendricks has a disability as defined under the ADA, see 42 U.S.C. § 12102, the record is devoid of any allegation that the defendants knew of Mr.Hendricks's alleged bipolar disorder. The defendants cannot have discriminated against Mr. Hendricks solely on the *basis* of a disability if they knew nothing about it. See 42 U.S.C. §§ 12132, 12182; Baird, 192 F.3d at 467; cf., Hedberg v. Indiana Bell Telephone Co., Inc., 47 F.3d 928, 932 (7th Cir. 1995) ("At the most basic level, it is intuitively clear when viewing the ADA's language in a straightforward manner that an employer cannot fire an employee 'because of' a disability unless it knows of the disability."). Thus, amendment of the Complaint to assert these claims would be futile.

### b.    Mrs. Hendricks's Retaliation Claim

Nowhere in the Hendrickses' filings do they assert that Mrs. Hendricks suffers from a disability. Rather, her putative ADA claim is based upon a theory that some or all of the defendants retaliated against her for opposing discrimination against Mr. Hendricks due to his bipolar disorder. See, e.g., 42 U.S.C. § 12203. However, because the Hendrickses have not alleged facts that would

PJG

support a claim of discrimination against Mr. Hendricks under the ADA, any claim of retaliation based on such alleged discrimination must also fail.

### 2. Civil rights claims of a violation of due process relating to the defendants' alleged ban of Mr. Hendricks from the Koger Center

Mr. Hendricks also has asserted a claim that he has been denied due process of law because he did not receive a hearing prior to being banned from the Koger Center or a right to appeal the ban. (Compl. ¶¶ 19-21, Docket Entry 1 at 4; Tr., Docket Entry 75 at 44-48.)

To state a claim for damages under 42 U.S.C. § 1983, an aggrieved party must allege: (1) that he or she was injured; (2) by the deprivation of any rights, privileges, or immunities secured by the Constitution and laws of the United States; (3) by a person acting under color of state law. See 42 U.S.C. § 1983. As an initial matter, the court observes that these claims have been asserted only against Defendants Hood, Weingarth, and Taylor.[10] (Compl. ¶¶ 19-21, Docket Entry 1 at 4.) Furthermore, no § 1983 claim based on the facts alleged can lie against Hood or the Koger Center Defendants, as Mr. Hendricks has not identified any constitutional or federal right to enter the Koger Center.[11] Cf. Press-Enterprise Co. v. Superior Court of California for Riverside County, 478 U.S.

---

[10]To the extent that the Hendricksges attempt to assert some type of civil rights claim against the Philharmonic Defendants with regard to Mrs. Hendricks's contract, such a claim must fail. "To implicate 42 U.S.C. § 1983, conduct must be fairly attributable to the State." DeBauche v. Trani, 191 F.3d 499, 506 (4th Cir. 1999). Except in four circumstances, none of which are alleged in this claim, the action of a private actor does not qualify as an action of the state. Id. at 507-08. Thus, the termination of Mrs. Hendricks's contract by the Philharmonic raises only questions of state law, as the Philharmonic Defendants cannot be said to have acted under color of state law as required for a § 1983 claim. Therefore, Mrs. Hendricks fails to state a claim under § 1983 against the private Philharmonic Defendants for which relief can be granted.

[11]As discussed above, the ADA does not confer such a right. It merely prohibits one who operates a place of public accommodation from discriminating against a plaintiff solely on the basis of a disability.



1, 7 (1986) (recognizing the constitutional right of the accused and the public to attend an open public hearing). Mr. Hendricks cannot state a claim for a violation of due process in being deprived of protected property or liberty interest if he has not alleged such an interest. For the same reason, any claim under § 1985 asserting a conspiracy must also fail. Caldeira v. County of Kauai, 866 F.2d 1175, 1182 (9th Cir. 1989) (holding that "the absence of a section 1983 deprivation of rights precludes a section 1985 conspiracy claim predicated on the same allegations").

### 3. Civil rights claims of discrimination for hiring an African-American lawyer

The Hendrickses' remaining assertions are not properly before the court for consideration. For the first time in their sur-reply brief, the plaintiffs contend that the defendants violated federal civil rights statutes by discriminating against the Plaintiffs because they hired an African-American attorney. The Hendrickses raised this new "claim" despite the court's explicit instructions to limit their briefs "to the ADA claims that the Hendricks[es] discussed this morning and the civil rights statutes that we've discussed this morning [at the March 18 hearing] and nothing else." (Tr., Docket Entry 75 at 56.) Moreover, the court observes that, in following the explicit instructions of the court regarding additional briefing, the defendants have had no opportunity to respond to this new "claim." In the current procedural posture of this case, justice is not served by permitting the Hendrickses to continually assert new allegations in the context of the defendants' motions to dismiss in what can be reasonably foreseen to become an endless spiral of attempts to make federal jurisdiction "stick." The newly raised allegations regarding the Hendrickses' attorney are simply not properly before the court at this time pursuant to any motion or other filing permitted by the court. In fairness, the court must make its recommendation based upon the allegations raised in the Complaint and additional



filings permitted by the court. Based on those assertions, no federal jurisdiction exists over this dispute.

## CONCLUSION

The allegations of the Complaint, considered with the additional allegations permitted by the court to be advanced by the plaintiffs at this time, do not raise a substantial federal claim. See Grable & Sons Metal Prods., Inc., 545 U.S. at 313; Lovern, 190 F.3d at 654. The court finds that the allegations properly before the court raise issues only of state law and do not state truly federal claims. Lovern, 190 F.3d at 655. Further, for the reasons discussed above, amendment of the Complaint to assert ADA or civil rights claims based on Mr. Hendricks's ban from the Koger Center and the termination of Mrs. Hendricks's contract with the Philharmonic would be futile. Accordingly, in the absence of any further properly filed motion to amend, the Complaint should be dismissed without prejudice for lack of subject matter jurisdiction.

## RECOMMENDATION

For all of the foregoing reasons, the court recommends that the defendants' motions to dismiss (Docket Entries 35 and 60) be granted and that the Complaint be dismissed for lack of subject matter jurisdiction. Further, because the court lacks subject matter jurisdiction, the plaintiffs' motion for a temporary injunction and motion to appoint counsel (Docket Entry 70) and the plaintiffs' motion for summary judgment (Docket Entry 43) should be terminated.

Paige J. Gossett
UNITED STATES MAGISTRATE JUDGE

June 19, 2009
Columbia, South Carolina

*The parties' attention is directed to the important notice on the next page.*

Page 12 of 13

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Court Judge. Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. In the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must "only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation." Diamond v. Colonial Life & Acc. Ins. Co., 416 F.3d 310 (4th Cir. 2005).

Specific written objections must be filed within ten (10) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). The time calculation of this ten-day period excludes weekends and holidays and provides for an additional three (3) days for filing by mail. Fed. R. Civ. P. 6(a) & (e). Filing by mail pursuant to Fed. R. Civ. P. 5 may be accomplished by mailing objections to:

Larry W. Propes, Clerk
United States District Court
901 Richland Street
Columbia, South Carolina 29201

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); Thomas v. Arn, 474 U.S. 140 (1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985).